```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS


PRESIDENT AND FELLOWS OF         )
HARVARD COLLEGE,                 )
                                 )       Civil Action
            Plaintiff,           )       No. 25-11472-ADB
                                 )
v.                               )
                                 )
DEPARTMENT OF HOMELAND SECURITY, )
et al.,                          )
                                 )
            Defendants.          )


              BEFORE THE HONORABLE ALLISON D. BURROUGHS
                  UNITED STATES DISTRICT JUDGE


                            HEARING


                         May 29, 2025
                          10:32 a.m.


            John J. Moakley United States Courthouse
                       Courtroom No. 17
                       One Courthouse Way
                  Boston, Massachusetts  02210
```

Kelly Mortellite, RPR, RMR, CRR
Official Court Reporter
One Courthouse Way, Room 3200
Boston, Massachusetts  02210
mortellite@gmail.com

```
 1    APPEARANCES:

 2    Counsel on behalf of Plaintiff:

 3    Ian Heath Gershengorn
      Ishan Bhabha
 4    Lauren J. Hartz
      Jenner & Block LLP
 5    1099 New York Ave., NW
      Suite 900
 6    Washington, DC 20001
      202-639-6869
 7    igershengorn@jenner.com

 8    Steven Paul Lehotsky
      Serena M. Orloff
 9    Lehotsky Keller Cohn LLP
      200 Massachusetts Avenue NW
10    Washington, DC 20001
      202-365-2509
11    steve@lkcfirm.com

12    Jennifer O'Connor
      Harvard University
13

14    Counsel on behalf of Defendants:

15    Tiberius T. Davis
      Department of Justice
16    Civil Division
      950 Pennsylvania Avenue
17    Washington, DC 20530-0001
      202-326-7924
18    tiberius.davis@usdoj.gov

19    Rayford Farquhar
      Office of the United States Attorney
20    John Joseph Moakley
      United States Federal Courthouse
21    1 Courthouse Way, Suite 9200
      Boston, MA 02210
22    617-748-3100
      rayford.farquhar@usdoj.gov
23

24

25
```

```
 1                    P R O C E E D I N G S
 2              (The following proceedings were held in open court
 3    before the Honorable Allison D. Burroughs, United States
 4    District Judge, United States District Court, District of
 5    Massachusetts, at the John J. Moakley United States Courthouse,
 6    One Courthouse Way, Courtroom 17, Boston, Massachusetts, on
 7    Thursday, May 29, 2025.)
 8              COURTROOM CLERK:  Court is in session.  Please be
 9    seated.
10              This is Civil Action 25-11472, President and Fellows
11    of Harvard College v. Department of Homeland Security, et al.
12    Will counsel identify themselves for the record.
13              MR. GERSHENGORN:  Good morning, Your Honor.  Ian
14    Gershengorn from Jenner & Block on behalf of Harvard
15    University.  I'd like to introduce Jennifer O'Connor, who is
16    with me today.  She is the vice president and general counsel
17    of Harvard.  And with the court's permission, I'll let other
18    counsel introduce themselves.
19              MS. HARTZ:  Good morning, Your Honor.  Lauren Hartz
20    from Jenner & Block for plaintiff Harvard University.
21              MR. BHABHA:  Ishan Bhabha also from Jenner & Block for
22    Harvard.
23              MR. LEHOTSKY:  Good morning, Your Honor.  Steven
24    Lehotsky from Lehotsky, Keller, Cohn for plaintiff Harvard.
25              MS. ORLOFF:  Good morning, Your Honor.  Serena Orloff
```

1  from Lehotsky, Keller, Cohn also for plaintiff Harvard.

2  MR. DAVIS: Tiberius Davis from the Department of
3  Justice on behalf of defendants.

4  MR. FARQUHAR: Good morning, Your Honor. Ray Farquhar
5  from the United States Attorney's Office. Thank you.

6  THE COURT: All right, gang. So we're here for
7  argument on the preliminary injunction motion. Before we start
8  this morning, I got from defendants a notice of intent to
9  withdraw that was sent to Harvard yesterday. And I don't know
10 whether to take that as an acknowledgment that procedural steps
11 were not taken before and are now going to be taken and that
12 changes the posture of this for today or if we're proceeding
13 today on the motion papers that are before me.

14 MR. DAVIS: Your Honor, I don't think it's an
15 admission that anything was done wrong, but the point is that
16 rather than deal with the TRO and all the litigation, the
17 Department has decided that it would be better or simpler going
18 forward to just go through the procedures that Harvard is
19 saying we should go through; and that because those will take
20 at least 30 days, if not 60 days, given their appeal rights,
21 that both the TRO and the potential PI are moot at this time
22 and currently the certifications are not canceled or revoked at
23 this point.

24 THE COURT: So the TRO is in place.

25 MR. DAVIS: Yes.

1        THE COURT: Are you suggesting that that just lapses
2   and there's nothing in place, or are you going to agree that
3   there's a preliminary injunction in place while we're working
4   through this?
5        MR. DAVIS: Well, I think that they would both be moot
6   because there's about 30 days that they have to respond. Then
7   they get an interview and appellate rights. And so we would
8   say it's moot and that the TRO should be vacated and there
9   shouldn't be a PI because there's nothing to enjoin at this
10  time and there's no irreparable harm, given the timeline.
11       THE COURT: So if you go through the procedural steps
12  that the filings suggested you were going to go through, we
13  would still end up back here evaluating whether they were
14  terminated for sort of a retaliatory motive or other, whether
15  it runs afoul of the First Amendment. Aren't we still going to
16  end up back here in essentially the same place, albeit the
17  procedural niceties having been better observed?
18       MR. DAVIS: Not necessarily, Your Honor, because the
19  agency is an intermediary that gets to make its own decision
20  and we don't know on what basis they will make that decision.
21  Plus there is a lot of time gap between the letter that they
22  cite as the basis of their retaliatory motive. And there's
23  also, again, another intermediary in the agency that will
24  decide this through the proper procedures. And so by that
25  point we think the case would be quite different and that the

1   retaliation right now is moot, and it's certainly not ripe to
2   say that there will be retaliation for a decision that has yet
3   to be made.
4           THE COURT:  Harvard also filed last night, they filed
5   a proposed order, but they also filed a supplemental
6   declaration, and that declaration seems to suggest that there
7   are things happening in violation of the TRO order.  Correct?
8           MR. DAVIS:  I am not aware of any violations, and I
9   will certainly make sure that the agencies are following and
10  complying with that order.
11          THE COURT:  Have you seen the declaration?
12          MR. DAVIS:  I viewed it briefly this morning, yes.
13          THE COURT:  So they're saying visas that had been
14  approved have been revoked, that some visas that were in
15  process are not being advanced.  So that's sort of the end of
16  the declaration.
17          MR. DAVIS:  I'm not totally sure on the timing of
18  those, but since things are moving fast, it might just be that
19  some people on the ground didn't get the memo.  And obviously
20  we'll follow up with the Department to make sure that
21  everything is going according to the procedures.
22          THE COURT:  So, I mean, I'm going to hear from
23  Mr. Gershengorn or whoever over there wants to speak, but I
24  have to say that I would feel more comfortable, given what has
25  preceded this, if we had some kind of order in place, like

something akin to the TRO order or modified in some way and called a preliminary injunction order. It seems that it gives some protection to international students that might be anxious about coming here or anxious about being allowed to remain here once they're here.

Do you have any objection to an order being put in place that requires the maintenance of the status quo?

MR. DAVIS: I think a slight objection, just to the fact that we don't think it's proper to enter an injunction when something is moot and that there's nothing to enjoin. But practically we don't think it's going to make a difference because we're going to go through the procedures anyway.

I will just note that we think the injunction should be narrowed to sort of the decertification through this process and just enjoining that and no other sort of legal bases that might be used for other means.

THE COURT: Mr. Gershengorn.

MR. GERSHENGORN: Can I use the podium, Your Honor?

THE COURT: Sure.

MR. GERSHENGORN: Thank you, Your Honor.

You know, I think Your Honor probably won't be surprised to know that we think the NOIW is both further evidence of the First Amendment problem and itself an independent violation.

In terms of the back and forth, this is really like

1  sentence first and verdict afterwards, so there continues to be
2  a different set of rules for Harvard, a different set of
3  procedures for Harvard, a different set of laws for Harvard.
4        In terms of the back and forth you just had with
5  Mr. Davis, I would say the case is definitely not moot.  You
6  have not heard the government say that they are withdrawing the
7  letter of revocation and will not enjoin it -- will not reissue
8  it and that, you know, we can't even discuss mootness I think
9  until they withdraw the letter, promise not to reissue that or
10 otherwise terminate our certification and this court so orders
11 that.
12       So I just don't think it's correct that the case is
13 moot, and we would urge Your Honor, therefore, to hear the
14 arguments and enter an order.
15       THE COURT:  Well, what he's saying is he's not -- I
16 think he said he had a slight objection, which I don't really
17 know what that means, but he then said as a practical matter he
18 wasn't really going to pursue an objection to having some kind
19 of order in place that maintained the status quo while this is
20 pending.
21       MR. GERSHENGORN:  Right.  And we think that's
22 essential, Your Honor, because of the kinds of harms that Your
23 Honor has identified that continue to happen because of the
24 possibility that the administration will do other things to
25 terminate, withdraw the certification or otherwise prevent us

1   from having the F-1 students in, we do think that an order like
2   that is essential.  And so, you know, as far as I'm concerned,
3   as I said, I don't think it is moot and I think Your Honor
4   needs to issue that kind of order.
5         I would also say, if I could, that we would want at
6   least -- we just received this, so just to be clear on the
7   timing, this went to the Harvard International Office at 11:48
8   p.m. last night.  It was not served on or given to us in any
9   way until this morning, so we're processing it.  And we'd like
10:41 10  to at least reserve the idea that, you know, we'd like to send
11  something to the court perhaps by a week from today about how
12  we might or might not independently proceed with respect to
13  asking this court to do something with respect to the notice of
14  the NOIW.
15        Again, we're sort of still processing that, but it
16  goes back to the point I started with, which is that we are,
17  you know, quite concerned that given the long pattern of
18  retaliation for exercise of First Amendment rights, which is
19  over and over, as we'll talk about this morning if Your Honor
10:42 20  is interested, but you've seen in the papers, that this is just
21  the next step and an independent violation.
22        So we'd like to put down a marker that by next
23  Thursday or earlier at the Court's convenience we would
24  indicate what if anything we'd like the court to do with
25  respect to that.

```
 1              THE COURT:  So you're basically asking that this be
 2   continued for a week?
 3              MR. GERSHENGORN:  No, Your Honor.  Well, I'm asking --
 4   I think -- it's whatever would work best for the court.  We
 5   think that at the very least the court should enter an
 6   injunction, convert the TRO to a PI, and enter an injunction
 7   that prohibits the Secretary or anyone else in the government
 8   from withdrawing our certification throughout the time that it
 9   takes to go through the NOIW and any appeal and challenge
10   rights.  So that's the thing we think cements our rights, and
11   we think we're entitled to that.
12              THE COURT:  I also just got their filing this morning,
13   and I've read it but I haven't had it for long either.  So I am
14   going to put a preliminary injunction order in place.
15              Do you all, Mr. Davis or Mr. Farquhar, do you all want
16   to get together and see if there's anything in the government's
17   proposed order that -- I'm sorry -- the plaintiff's proposed
18   order that changes in the face of what's happened today, or do
19   you want me to just enter that order?  Do you want to get
20   together and come up with or see if you can agree to an order?
21              MR. DAVIS:  I mean, obviously we don't think there's a
22   need for an order, but we are willing to discuss with opposing
23   counsel what a proper scope of an injunction, as long as the
24   procedures can continue forward, would be.  I think paragraph 2
25   seemed fine.  It's paragraph 1 that might be a bit overbroad
```

```
 1   that we might have some concerns with, especially after
 2   opposing counsel just said other things that are not at issue
 3   might be enjoined or they're concerned about.
 4           THE COURT:  I'm sorry.  Let me interrupt you.  What
 5   they have here is their proposed order which is A through E.
 6           MR. DAVIS:  Okay.
 7           THE COURT:  So there's not a 1 or 2.
 8           MR. DAVIS:  I think it was the second bullet seemed
 9   fine, about the May 22 letter.
10           THE COURT:  So B, that's about being enjoined from
11   giving any force or effect to Homeland Security's May 22
12   revocation notice.  So that one I'm assuming there will be some
13   form of that entered.  That's the crux of this, right?
14           MR. DAVIS:  If Your Honor thinks that an injunction is
15   necessary pending the procedures, then that would be I think an
16   appropriate scope.
17           THE COURT:  Do you all want to get together on this,
18   or do you want me to just craft something?
19           MR. GERSHENGORN:  Your Honor, I think, I'm happy to
20   get together with government counsel.  I will say that in light
21   of the events of last night, I think we would contemplate at
22   least in F that said there will be no other withdrawals of
23   certification.  In other words, the relief we had sought was
24   targeted directly to the May 22 letter, but we want to make
25   sure there are no shenanigans between now and then, so I think
```

    1  what we'd be asking for is a court order that there be no

    2  withdrawal of certification, period, until the end of the NOIW

    3  process and accompanying appeals/challenges after that's done.

    4        So whether Your Honor -- I'm happy to submit competing

    5  proposals.  I'm happy to talk to the government first and then

    6  submit competing proposals.  Whatever works best for Your

    7  Honor.

    8        THE COURT:  Well, I'll leave the TRO in place until we

    9  have something to replace it.  That will give you some time to

10:45  10  see if you can come up with something mutually agreeable.  If

   11  you can't, you can each submit your own, and I can rule on

   12  that.

   13        But stay there, Mr. Gershengorn.  I have another

   14  question for you.  Mr. Davis's view is that this could be a

   15  completely different case in 30 days or 90 days, whatever it

   16  takes to work through the process.  If they decide not to -- if

   17  the agency decides not to withdraw, then the case is moot,

   18  right?  But if the agency does decide to withdraw Harvard's

   19  ability to have international students, we haven't mooted any

10:46  20  of the issues about whether that was done in violation of First

   21  Amendment rights, in a retaliatory fashion, anything like that.

   22        He's saying we should wait because it could be

   23  completely different.  What's your view on waiting, since it

   24  seems to me that some of those issues are unlikely to change

   25  unless they completely walk away from this plan?

1    MR. GERSHENGORN:  So the concern we have, Your Honor,
2    and the reason why I'm asking to sort of put down a marker to
3    let us process is that the First Amendment harms, as the
4    government well knows, are happening notwithstanding that kind
5    of injunction.
6            Our students, we are having people who are terrified
7    and are transferring.  We're having international students who
8    are trying to pull out.  Domestic students, it's in the
9    affidavit, Your Honor, you've seen, domestic students are
10   seeking to withdraw or transfer.
11           So the First Amendment harms that we are suffering are
12   real and continuing.  And so I think that's why we have some
13   concern with the government's sort of blanket assertion that
14   this will all be done in 60 days and in the meantime there's
15   nothing to be worried about.  Because I will be very candid.
16   We're quite worried and we're experiencing real harm in
17   realtime because of the First Amendment.
18           So I guess what I'm saying is I think the issues might
19   well change some.  Our core issues may remain.  But what I'm
20   troubled by, and I know I want to have time to discuss with my
21   client, is this real harm that's happening in the meantime from
22   the NOIW process itself.  Now, again, I'm not saying we're
23   going to ask that anything be done.  We're just asking for kind
24   of a week to think about it.
25           THE COURT:  Right.  I can't enjoin their engaging in

    1  the process contemplated by the notion of intent to withdraw.
    2  And I hear you that you're experiencing real harm.  I assume
    3  people are afraid and reluctant to come here and all of that.
    4  But I'm not sure there's anything I can do, even if you both
    5  wanted me to, beyond putting the TRO in place, which I've
    6  already agreed will remain in place until we come to a
    7  different order.
    8         MR. GERSHENGORN:  Okay.  All right.
    9         THE COURT:  Does that make sense?
10:48 10         MR. GERSHENGORN:  Yes.  And I appreciate that
   11  guidance.  That will obviously influence what we think about
   12  for next week.  So in the meantime, I just would reiterate what
   13  I said at the start with respect to the order; that in light of
   14  the events, I think we would modify our own proposed order so
   15  that we get a true standstill for the time that this takes
   16  before we're back before Your Honor.
   17         THE COURT:  Okay.  So, Mr. Davis, I'd like you to get
   18  with them and see if you can agree to an order.  I know you
   19  don't think an order is necessary, but I do think an order is
10:49 20  necessary.  And it doesn't need to be draconian, but I want to
   21  make sure that it's worded in such a way that nothing changes
   22  until you've gotten through your process on the notice of
   23  intent to withdraw and we see where that ends up.
   24         So I want something in place, and I want it to be
   25  clear about what is allowed and what is not allowed, okay?

1    Because I do feel like the ambiguity in the process right now
2    is causing them some harm.  And to the extent that we can have
3    a clear order, we can try and minimize that.  I want to
4    maintain the status quo, so I want to stopgap whatever harm
5    they're experiencing as a result of the process being
6    undertaken by the government, which is your right, and the
7    process will play out, but I want to make sure that the status
8    quo is clearly maintained to the extent that we can make that
9    happen.
10            MR. DAVIS:  Understood.  Your Honor, I think the
11   government's only concern is, other than sort of the
12   decertification of the SEVP, there might be other legal avenues
13   or things that the government might consider, and I don't want
14   to foreclose that before being able to talk to the client and
15   also before they can even consider other legal avenues for
16   different actions.  That's sort of my concern with an
17   overbroad, that isn't focused on the SEVP decertifications that
18   we're talking about here.
19            THE COURT:  So now I'm not sure what you're
20   suggesting.  You have some other way that you're going to try
21   and keep the international students out of Harvard?
22            MR. DAVIS:  Not necessarily, Your Honor.  I just don't
23   want to foreclose other legal rights that the government might
24   have.
25            THE COURT:  Well, I would rather have a broad

```
 1   preliminary injunction order and then you come here if you have
 2   other things that you want to try and we can hear about them
 3   before it happens.  I think that's a way to keep the harm from
 4   perpetuating.
 5           MR. DAVIS:  Understood, Your Honor.
 6           THE COURT:  Anything else from plaintiffs today?
 7           Do you want another date, or do you want to just go on
 8   in writing and see where we end up?
 9           MR. GERSHENGORN:  I think that probably makes sense,
10   Your Honor.  Let us talk to the government, and we'll keep the
11   court up to date on the status.
12           THE COURT:  Okay.  Anything else from the government?
13           MR. DAVIS:  Nothing further, Your Honor.
14           THE COURT:  I want to talk to counsel at sidebar.  And
15   since I know there are a lot of interested faces in this
16   courtroom, I just need to hash through some issues on who my
17   law clerks are and what would require them to be recused from
18   working on this case.  So I'm not going to air their individual
19   situations in front of the room, but that's what I want to talk
20   to counsel about.
21           Okay.  So could I see counsel at sidebar.  We are
22   otherwise recessed.
23                  (Recessed, 10:51 a.m.)
24
25
```

```
 1                CERTIFICATE OF OFFICIAL REPORTER
 2
 3            I, Kelly Mortellite, Registered Professional
 4    Reporter, Registered Merit Reporter and Certified Realtime
 5    Reporter, in and for the United States District Court for the
 6    District of Massachusetts, do hereby certify that the foregoing
 7    transcript is a true and correct transcript of the
 8    stenographically reported proceedings held in the
 9    above-entitled matter to the best of my skill and ability.
10                    Dated this 29th day of May, 2025.
11
12                    /s/ Kelly Mortellite
13                    _____
14                    Kelly Mortellite, RPR, RMR, CRR
15                    Official Court Reporter
16
17
18
19
20
21
22
23
24
25
```