# Exhibit 33

UNCLASSIFIED
SBU



| | |
|---|---|
| Action Office: | CONGEN, ICE, DAO, CONS, PAS |
| Info Office: | Cleared_Other, Cleared_DoS, MGT_INFO, CONS_INFO, PAS_INFO |
| MRN: | 25 STATE 52014    Reply |
| Date/DTG: | May 30, 2025 / 300208Z MAY 25 |
| From: | SECSTATE WASHDC |
| Action: | ALL DIPLOMATIC AND CONSULAR POSTS COLLECTIVE *Immediate* |
| E.O: | 13526 |
| TAGS: | CMGT, CVIS, KFRD, KPAO |
| Captions: | SENSITIVE |
| Reference: | A) 25 STATE 5914 |
| | B) 25 STATE 50220 |
| | C) 25 STATE 49972 |
| | D) 25 STATE 48928 |
| | E) 25 STATE 26168 |
| Subject: | ACTION REQUEST - Enhanced vetting for All Nonimmigrant Visa Applicants Traveling to Harvard University |

1. (U) This is an action request. See paragraph 3.
2. (SBU) SUMMARY: In Ref A, the Department directed consular officers to maintain extra vigilance and to comprehensively review and screen every visa applicant for potential security and non-security related ineligibilities including to assess whether the applicant poses a threat to U.S. national security.
In Ref B, consular officers were instructed to prepare for expanded social media screening and vetting, pursuant to the implementation of Executive Orders (E.O.) 14161 and E.O. 14188, known respectively as Protecting the United States from Foreign Terrorists and Other National Security and Public Safety Threats and Additional Measures to Combat Anti-Semitism. To address acute concerns of violence and anti-Semitism at Harvard University, this cable instructs posts to immediately begin additional vetting of any nonimmigrant visa applicant seeking to travel to Harvard University for any purpose. Such applicants include, but are not limited to prospective students, students, faculty, employees, contractors, guest speakersk, and tourists. Implementation of this ALDAC will also serve as a pilot for expanded screening and vetting of visa applicants. This pilot will be expanded over time. END SUMMARY.
3. (SBU) ACTION REQUEST: Effective immediately, consular sections must conduct a complete screening of the online presence of any nonimmigrant visa applicant seeking to travel to Harvard University for any purpose. Such applicants include, but are not limited to prospective students, students, faculty, employees, contractors, guest speakers, and other visitors. To determine whether an applicant seeks to travel to Harvard University, consular sections should use information provided by applicants in the DS-160 application, during pre-screening, or during the interview. Such applicants, if otherwise eligible, should be refused under INA 221(g) pending review of their online presence.
4. (SBU) As in all instances in which an applicant fails to provide certain information on request, consular officers should consider whether the lack of any online presence, or having social media accounts restricted to "private" or with limited visibility, may be reflective of evasiveness and call into question the applicant's credibility. Consistent with 9 FAM 302.1-2(B)(6), if you are not satisfied that the applicant credibly, and to your personal satisfaction, meets the standards required by the visa classification for which he is applying, refuse the applicant under INA

your personal satisfaction, meets the standards required by the visa classification for which he is applying, refuse the applicant under INA 214(b). This is true even in cases where the applicant has convinced you that he is not an intending immigrant, and even in cases where the applicant is also ineligible under another section of the law.

5. (SBU) Once a consular officer has determined the applicant is otherwise eligible for the requested nonimmigrant status, the consular officer must refuse the case under INA 221(g), inform the applicant that his case is subject to review of his online presence, request that the applicant set all of his social media accounts to "public," and remind him that limited access to or visibility of social media activity could be construed as an effort to evade or hide certain activity. Consular officers must then refer the cases to the Fraud Prevention Unit (FPU) via the Enterprise Case Assessment System (ECAS) as described in 7 FAH-1 H-945.4, using the SOCIAL MEDIA REVIEW category. All visa cases referred for online presence review must be referred in ECAS to ensure global tracking of this work.

6. (SBU) Although referred under the ECAS category SOCIAL MEDIA REVIEW, FPUs must not limit their review of these cases to the applicant's social media activity alone. Rather, the FPU should conduct a comprehensive and thorough vetting of each such applicant, including social media activity based on identifiers provided in the DS-160, and more generally any online presence, to identify possible inadmissibilities, information suggesting the applicant intends to engage in activities inconsistent with the visa classification sought, or other information that might call into question the applicant's credibility.

7. (SBU) Consular officers are reminded that, while many activities might not rise to the level of a visa inadmissibility, they should otherwise consider that information in assessing the credibility of a visa applicant's claimed purpose of travel. INA 214(b) requires the applicant to show credibly that all activities in which he is expected to engage in while in the United States are consistent with the specific requirements of his visa classification. That is, if you are not personally and completely satisfied that the applicant, during his time in the United States, will engage in activities consistent with his nonimmigrant visa status, you should refuse the visa under INA 214(b).

8. (SBU) Per Ref E, when an online presence review uncovers potentially derogatory information that might lead to an INA 212(a)(3) ineligibility, the consular officer should follow the instructions in 9 FAM 304.2 to request an SAO. Consular officers are reminded to apply inadmissibility grounds under INA 212(a) only in accordance with applicable procedures, including to request an SAO or Advisory Opinion (AO) as directed in the Foreign Affairs Manual (FAM). Consular officers are also reminded of guidance in 9 FAM 302.5-4 regarding the applicability of INA 212(a)(3)(A)(ii) under which a visa applicant is ineligible if the consular officer knows or has reason to believe that the applicant is traveling to the United States solely, principally, or incidentally to engage in any other unlawful activity. Consular officers should take care to enter detailed case notes regarding the specific activities expected in the United States and request an advisory opinion per 9 FAM 302.5-4(C).

9. (SBU) Based on information identified by the Department of Homeland Security, Harvard University failed to maintain a campus environment free from violence and anti-Semitism, the enhanced vetting measures described in this guidance aim at ensuring that consular officers can appropriately identify such visa applicants with histories of anti-Semitic harassment and violence, and to duly consider their visa eligibility under U.S. immigration law.

This guidance is consistent with E.O. 14188, Additional Measures to Combat Anti-Semitism, which states that it is the "policy of the United States to combat anti-Semitism vigorously, using all available and appropriate legal tools... or otherwise hold to account the perpetrators of unlawful anti-Semitic harassment and violence."

Implementation of this vetting measure for applicants traveling to Harvard will also serve as a pilot for expanded screening and vetting of visa applicants, and as the Department continues to develop and expand any enhanced vetting requirements for student visas generally, it may announce similar measures for other groups of visa applicants as appropriate, and in accordance with U.S. law.

Signature: RUBIO