**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

PRESIDENT AND FELLOWS OF HARVARD COLLEGE,

       Plaintiff,

   v.

DEPARTMENT OF HOMELAND SECURITY, *et al.*

       Defendants.

Case No. 1:25-cv-11472-ADB

**MOTION TO ENTER PLAINTIFF'S PROPOSED
<u>PRELIMINARY INJUNCTION ORDER</u>**

## INTRODUCTION

Harvard University ("Harvard") respectfully moves this Court to enter the attached proposed order ("Plaintiff's Proposed Order," attached as Exhibit A). That order implements the Court's directive to maintain the status quo with respect to Harvard's Student and Exchange Visitor Program ("SEVP") certification and Exchange Visitor Program ("EVP") designation while the administrative process contemplated by the government's May 28, 2025 Notice of Intent to Withdraw ("NOIW") proceeds.[1] By contrast, the government's proposed order does not preserve the status quo. It seeks instead to preserve the government's ability to reimpose the precise result inflicted by the May 22, 2025 Revocation Notice under a different name. Moreover, the government's order would guarantee the exact dynamic that the Court seeks to avoid. Under its proposal, the government can withdraw Harvard's SEVP certification or EVP designation on a moment's notice, triggering another chaotic rush to the courthouse and request for emergency relief to stem the serious and irreparable harm that would once again result. For the reasons that follow, Plaintiff's Proposed Order should be entered.

## ARGUMENT

At the preliminary injunction hearing on May 29, 2025, this Court ruled that it would grant a preliminary injunction to maintain the status quo, provide protection to international students, and "stopgap whatever harm [Harvard is] experiencing." Transcript of May 29, 2025 Hearing at 6:25-7:1-5, 14:20-23, 15:3-9 ("Hearing Tr."). Following the Court's directive, the parties exchanged draft proposed orders and then conferred to try to resolve differences. The parties

---

[1] Harvard reserves all rights to challenge the NOIW process, including but not limited to on First Amendment and APA grounds.

reached agreement on paragraphs A, B, C, D, E, and G of the proposed order, and narrowed their disputes to three issues in paragraphs F and H.[2] Each disagreement is addressed in turn below.

## I.        Paragraph F is Appropriately Tailored to Preserve the Status Quo

The first dispute concerns paragraph F, which precludes the government "from giving effect to any suspension, withdrawal, revocation, termination, or other alteration of Plaintiff's SEVP certification or Exchange Visitor Program designation **or any other departure from the status quo by means of a categorical restriction of Plaintiff's authority to sponsor nonimmigrant F visas or J visas**," except by the agency process invoked by the NOIW. The government objects to the language in bold.

This Court indicated at the May 29, 2025, hearing that "I want to make sure [the order is] worded in such a way that nothing changes until you've gotten through your process on the notice of intent to withdraw and we see where that ends up." Hearing Tr. at 14:20-23. As the Court recognized, "people are afraid and reluctant to come here." *Id.* at 14:2-3. As a result, the Court indicated that the government should maintain the status quo with respect to Harvard's ability to have international students while the administrative process unfolds: "I want to maintain the status quo, so I want to stopgap whatever harm [Harvard is] experiencing as a result of the process being undertaken by the government ... [and] I want to make sure that the status quo is clearly maintained to the extent we can make that happen." *Id.* at 15:3-9.

Harvard's Proposed Order does just this and no more. The status quo here is the parties' positions prior to May 22, 2025, when Harvard's authority to sponsor foreign nonimmigrant students had been settled for decades. Harvard's proposal therefore precludes the government from

---

[2] Counsel accordingly certify that per Local Rule 7.1(a)(2), they have conferred, narrowed the issue, and attempted in good faith to resolve it.

disturbing this status quo, either through giving effect to the May 22, 2025 Revocation Notice or by accomplishing the same result through another categorical restriction on Harvard's authority to sponsor non-immigrant students.

The Court's power to enter such a status quo order is clear. Preliminary injunctions are meant to "preserve the relative positions of the parties until a trial on the merits can be held." *Lackey v. Stinnie*, 145 S. Ct. 659, 667 (2025) (quotation marks omitted). This includes, where appropriate, preventing the parties from unsettling the status quo in new ways linked to the original alleged violation. Courts hold "broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future, unless enjoined, may fairly be anticipated from the defendant's conduct in the past." *Brown v. Tr. of Bos. Univ.*, 891 F.2d 337, 361 n.23 (1st Cir. 1989) (quotation marks omitted) (holding that the court could prospectively enjoin new mechanisms of discrimination against the plaintiff employee, though it could not preclude any discrimination against any other employee). Thus, this Court "has the authority to restrain not only the exact same act as the one found unlawful," but also "possible future [action]" if the moving party "demonstrate[s] that there exists some cognizable danger of recurrent violations." *EEOC v. Aviation Port Serv., LLC*, No. 18-cv-10909, 2020 WL 1550564, at *12 (D. Mass. Apr. 1, 2020) (internal quotation marks omitted). The government simply has no entitlement to impose the precise same harm through creative re-labeling.

Nor is it speculative to believe the government might seek an alternative categorical restriction. Even in the short time since the hearing, the government has committed to continuing—

indeed to intensifying—its retaliatory campaign.[3] A properly tailored injunction is demonstrably necessary to prevent the government from implementing the same Revocation Notice under a different name and to provide reassurance to Harvard's international students. Absent Harvard's proposed language, there is nothing to stop the Department of Homeland Security ("DHS") from issuing a new Revocation Notice with a new date, or simply cutting off Harvard's access to the Student and Exchange Visitor Information System ("SEVIS"), and, as the Court is rightly wary of, again throwing Harvard and its international community into turmoil.

In short, as this Court recognized, this injunction is intended to avoid "end[ing] up back here in essentially the same place" if the government disturbs the status quo by imposing categorical restrictions on Harvard's authority to sponsor nonimmigrant visas. Hearing Tr. at 5:16. Harvard's Proposed Order properly seeks to preserve the status quo and to suspend the harm that these actions will inflict until this Court has a chance to rule. As the Supreme Court has observed, it is "a salutary principle that when one has been found to have committed acts in violation of a law he may be restrained from committing other related unlawful acts." *NLRB v. Express Publ'g Co.*, 312 U.S. 426, 436 (1941).

## II.    Paragraph F's 30-Day Stay to Seek Judicial Review is Appropriate

The government objects to proposed language in Paragraph F that would briefly stay the effectiveness of a future withdrawal of Harvard's certification for 30 days to allow for orderly judicial review. That language provides as follows: "Any suspension, withdrawal, revocation,

---

[3] *See, e.g.*, Sophia Cai & Megan Messerly, *White House Convenes Meeting to Brainstorm New Harvard Measures*, POLITICO (May 30, 2025), https://www.politico.com/news/2025/05/30/white-house-convenes-meeting-to-brainstorm-new-harvard-measures-00376782; Presidential Proclamation, Enhancing National Security by Addressing Risks at Harvard University (June 4, 2025), https://www.whitehouse.gov/presidential-actions/2025/06/enhancing-national-security-by-addressing-risks-at-harvard-university.

termination, or other alteration of Plaintiff's SEVP certification or Exchange Visitor Program designation through the procedures laid out in 8 C.F.R. §§ 214.3 and 214.4, including as executed by issuance of the May 28, 2025 NOIW, **shall be stayed for 30 days to permit the parties to seek injunctive relief as appropriate from the Court**." The Court should adopt Harvard's proposed language. Requiring Harvard to rush to the courthouse for a third time, and requiring the Court to take up these issues on an emergency basis yet again to prevent predictable harms—the inevitable result of the government's approach—is inefficient, ineffective, and unnecessary.

As the Court recognized on May 29, even with "the procedural niceties having been better observed," questions as to the constitutionality of these revocations—flowing as they appear to from the enjoined May 22, 2025 letter and the government's violation of Harvard's First Amendment rights—are inevitable. Hearing Tr. at 5:17. The NOIW process, or any other categorical action the government takes against Harvard's ability to host nonimmigrant international students or scholars, will not have "mooted any of the issues about whether that was done in violation of the First Amendment rights, in a retaliatory fashion." Hearing Tr. at 12:18-21. And it is "axiomatic" that this court has the "inherent power to control its own docket to ensure that cases proceed before it in a timely and orderly fashion." *Torres-Ronda v. Nationwide Mut. Ins. Co.*, 18 F.4th 80, 85 (1st Cir. 2021) (quoting *United States v. Correia*, 531 F.2d 1095, 1098 (1st Cir. 1976)).

Accordingly, Harvard seeks to preserve time to seek relief as appropriate from the Court. The government, by contrast, contends that this pause is unnecessary because after revocation, Harvard can again rush to seek a TRO. But that course injects unnecessary uncertainty for Harvard and its students, who may yet again have their status as lawfully present nonimmigrants in the United States abruptly and categorically rescinded, and threatens to inflict continued chaos and

lasting damage on Harvard for no compelling reason. As Harvard demonstrated, the harm of the May 22, 2025 letter was immediate and irreparable. The government's suggestion thus ignores the very "real harm" and uncertainty that Harvard has endured and is still enduring. Hearing Tr. at 14:2. It also falls short of what is required to preserve the status quo and to give, as the Court asked, "some protection" to students who are "anxious," "afraid[,] and reluctant to come here." Hearing Tr. at 6:25-7:1-5, 14:3. The Court should enter Harvard's Proposed Order, which comports with the Court's instructions and avoids those unnecessary harms.

### III.    Paragraph H is Warranted and Commonplace

The parties' final disagreement is over paragraph H, which orders the government "to file a status report within 72 hours of entry of this Order describing the steps taken to ensure compliance with this Order—**including providing a copy of the guidance described in Section D above**—and certifying compliance with its requirements." The parties agree on section D, which requires the government to "immediately prepare guidance to" its officers, staff, employees, and contractors to disregard the May 22, 2025 Revocation Notice and restore all visa holders and applicants to the status quo ante, before DHS issued the Revocation Notice. But the government objects to the bolded language in Paragraph H.

This language touches only guidance mandated by this Court. It does not implicate privileged legal advice or work product. "Neutral, objective analyses" of an agency's obligations under the law are not typically privileged. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980). Likewise, statements embodying the agency's "effective law and policy" and "instructions to staff that affect a member of the public" are not shielded from disclosure. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975); *see also Nat'l Day Laborer Org. Network v. U.S. Immigr. and Cust. Enf't*, 486 F. Supp. 3d 669, 693 (S.D.N.Y. 2020) (guidance

6

distributed to *every* agency employee was not privileged). The guidance contemplated in paragraph D, by definition, will be the "working law" of the agency by virtue of this Court's order, and therefore must be disclosed. *Brennan Ctr. for Just. at N.Y. Univ. Sch. of L. v. U.S. Dep't. of J.*, 697 F.3d 184, 199-200 (2d Cir. 2012).

Harvard seeks to require the government to file this guidance to aid the Court in enforcing the Order, to demonstrate the government's compliance, and assure Harvard's students—both current and prospective—that the government has complied and that their visa status is not therefore at imminent or arbitrary risk. Given the government's pattern of behavior thus far and the chaos it has inflicted, this surety is more than warranted. District courts commonly impose this requirement when granting preliminary injunctions in cases involving a wide range of government agencies—including at least one of the agencies involved here. *See, e.g.*, *AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*, 766 F. Supp. 3d 74, 85 (D.D.C. 2025).[4]

## CONCLUSION

This Court should grant the preliminary injunction and enter Harvard's Proposed Order.

---

[4] *See also Martin Luther King, Jr. Cnty. v. Turner*, No. 25-cv-814, 2025 WL 1582368, at *22 (W.D. Wash. June 3, 2025); *Colorado v. U.S. Dep't of Health & Hum. Servs.*, No. 25-cv-00121, 2025 WL 1426226, at *24 (D.R.I. May 16, 2025); *Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*, No. 25-cv-00097, 2025 WL 1116157, at *26 (D.R.I. Apr. 15, 2025), *appeal docketed*, No. 25-1428 (1st Cir. May 1, 2025); *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, 763 F. Supp. 3d 36, 58 (D.D.C. 2025); *PFLAG, Inc. v. Trump*, No. 25-cv-337, 2025 WL 685124, at *33 (D. Md. Mar. 4, 2025); *Nat'l Council of Nonprofits v. Off. of Mmgt. & Budget*, No. 25-cv-239, 2025 WL 597959, at *20 (D.D.C. Feb. 25, 2025), *appeal docketed*, No. 25-5148 (D.C. Cir. Apr. 25, 2025); *New York v. Trump*, 764 F. Supp. 3d 46, 54 (D.R.I. 2025), *appeal docketed*, No. 25-1138 (1st Cir. Feb. 10, 2025).

Dated: June 12, 2025

LEHOTSKY KELLER COHN LLP

Steven P. Lehotsky (BBO # 655908)
Scott A. Keller*
Serena M. Orloff*
Shannon G. Denmark*
Jacob B. Richards (BBO # 712103)
200 Massachusetts Ave. NW, Suite 700
Washington, DC 20001
T: (512) 693-8350
F: (512) 727-4755
steve@lkcfirm.com
scott@lkcfirm.com
serena@lkcfirm.com
shannon@lkcfirm.com
jacob@lkcfirm.com

Katherine C. Yarger*
700 Colorado Blvd., #407
Denver, CO 80206
katie@lkcfirm.com

Joshua P. Morrow*
408 W. 11th Street, 5th Floor
Austin, TX 78701
josh@lkcfirm.com

Danielle K. Goldstein*
3280 Peachtree Road NE
Atlanta, GA 30305
danielle@lkcfirm.com

Respectfully submitted,

JENNER & BLOCK LLP

By: */s/ Ian H. Gershengorn*
Ishan Bhabha*
Ian Heath Gershengorn*
Lauren J. Hartz*
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Tel: (202) 639-6000
IBhabha@jenner.com
IGershengorn@jenner.com
LHartz@jenner.com

Andrianna Kastanek*
353 N Clark Street
Chicago, IL 60654
Tel: (312) 222-9350
AKastanek@jenner.com

William A. Burck*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
williamburck@quinnemanuel.com

Robert K. Hur*
KING & SPALDING LLP
1700 Pennsylvania Ave. NW, Suite 900
Washington, DC 20006
rhur@kslaw.com

*Admitted Pro Hac Vice

## CERTIFICATE OF SERVICE

Counsel for Plaintiff certify that they have submitted the foregoing document with the Clerk of Court for the District of Massachusetts, using the electronic case filing system of the Court. Counsel for Plaintiff hereby certify that they have served all parties electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2).

By: */s/ Ian H. Gershengorn*

Dated: June 12, 2025